**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

CELACARE TECHNOLOGIES, INC.,

      Plaintiff,

      v.

CIRCLE INTERNET FINANCIAL, LLC,

      Defendant.

Civil Action No. 1:24-cv-12322-RGS

Jury Trial Demanded

**MEMORANDUM OF LAW IN SUPPORT OF
CIRCLE INTERNET FINANCIAL, LLC'S MOTION TO DISMISS**

OF COUNSEL:

Joshua A. Baskin
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Email: jbaskin@wsgr.com

October 18, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Matthew D. Gorman (#569406)
One Boston Place
201 Washington Street
Boston, Massachusetts 02108
Telephone: (212) 497-7786
Email: mgorman@wsgr.com

*Counsel for Defendant Circle Internet
Financial, LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

    A.    The Parties .....................................................................................................3

    B.    Circle's Publicly Available Terms Govern USDC Transactions............................3

    C.    Celacare Allegedly Transferred USDC from One Third-Party Wallet to Another by Mistake.....................................................................................................5

    D.    Celacare Seeks Recourse from Circle .................................................................5

ARGUMENT ............................................................................................................................6

I.     Celacare Fails to State a Claim for Enforcement of Negotiable Instrument Under 6 Del. C. § 3-309 (Count I) ...................................................................................7

    A.    USDC Is Not a Negotiable Instrument Under Delaware Law ................................7

    B.    Count I Fails Because Celacare Was Never Entitled to Redeem USDC ................9

    C.    Count I Fails Because Celacare Willingly Transferred Possession of the USDC .10

II.    Celacare Fails to State a Claim for Replacement of Lost or Destroyed Securities Certificate Under 6 Del. C. § 8-405 (Count II)..................................................10

    A.    Count II Fails Because USDC Is Not a Certificated Security ..............................10

    B.    Count II Also Fails Because the USDC at Issue Has Not Been Lost, Destroyed, or Wrongfully Taken ...............................................................................................15

    C.    Count II Also Fails Because Celacare Has Not Posted a Bond ...........................15

III.   Celacare Fails to State a Claim for Money Had and Received Under Delaware Law (Count III) ......................................................................................................16

CONCLUSION........................................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arruda v. Sears, Roebuck & Co.*,
    310 F.3d 13 (1st Cir. 2002) ........................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................6

*C.N.S. Enters. v. G. & G. Enters.*,
    508 F.2d 1354 (7th Cir. 1975) ................................................................................13

*Colesanti v. Dickinson*,
    2019 U.S. Dist. LEXIS 145578 (D.R.I. July 19, 2019) ...................................17

*Fernandez–Montes v. Allied Pilots Assoc.*,
    987 F.2d 278 (5th Cir. 1993) ....................................................................................6

*Fleet Nat. Grp., Inc. v. Advanta Corp.*,
    2001 WL 1333405 (Del. Ch. Oct. 15, 2001) .....................................................16

*Guilfoile v. Shields*,
    913 F.3d 178 (1st Cir. 2019) .....................................................................................7

*Guthrie v. Hyatt*,
    1 Del. 446 (Jan. 1, 1834) ........................................................................................16

*Landreth Timber Co. v. Landreth*,
    471 U.S. 681 (1985) ................................................................................................13

*Liberte Capital Grp., LLC v. Capwill*,
    2004 U.S. Dist. LEXIS 35449 (N.D. Ohio Dec. 8, 2004) ...............................15

*Mergenthaler v. Enzolytics, Inc.*,
    2022 U.S. Dist. LEXIS 147023 (D. Del. Aug. 17, 2022) .................................15

*Moore v. Armed Forces Bank, N.A.*,
    534 S.W.3d 323 (Mo. Ct. App. 2017) ..................................................................15

*Pan Ocean Navigation, Inc. v. Rainbow Navigation, Inc.*,
    1987 WL 13519 (Del. Ch. 1987) ..........................................................................14

*Parker v. Stryker Corp.*,
    584 F. Supp. 2d 1298 (D. Colo. 2008) ...................................................................6

*Ridge at Red Hawk, L.L.C. v. Schneider*,
493 F.3d 1174 (10th Cir. 2007) ...............................................................7

*Ruiz v. Bally Total Fitness Holding Corp.*,
496 F.3d 1 (1st Cir. 2007) .......................................................................6

*Ruiz v. McDonnell*,
299 F.3d 1173 (10th Cir. 2002),
*cert. denied*, 538 U.S. 999 (2003) ..........................................................6

*Sec. & Exch. Comm'n v. Binance Holdings Ltd.*,
2024 WL 3225974 (D.D.C. June 28, 2024) ............................................13

*SEC v. Life Partners, Inc.*,
87 F.3d 536 (D.C. Cir. 1996) .................................................................13

*SEC v. Ralston Purina Co.*,
346 U.S. 119 (1953) ...............................................................................13

*SEC v. Ripple Labs., Inc.*,
682 F. Supp. 3d 308 (S.D.N.Y. July 13, 2023) .....................................13

*SEC v. Telegram Grp., Inc.*,
448 F. Supp. 3d 352 (S.D.N.Y. 2020) ...................................................13

*SEC v. Terraform Labs Pte. Ltd.*,
2023 WL 4858299 (S.D.N.Y. July 31, 2023) ........................................13

*St. Search Partners, L.P. v. Ricon Int'l, L.L.C.*,
2005 WL 1953094 (Del. Super. Ct. Aug. 1, 2005) ..........................16, 17

*Theriault v. Genesis HealthCare LLC*,
890 F.3d 342 (1st Cir. 2018) ...................................................................6

*Weinstein v. Luxeyard, Inc.*,
2022 WL 130973 (Del. Super. Ct. Jan. 14, 2022) ..................................8

*Yacubian v. U.S.*,
750 F.3d 100 (1st Cir. 2014) ...................................................................7

## STATUTES

6 *Del. C.* § 3-104 ...............................................................................8, 9

6 *Del. C.* § 3-309 .................................................................2, 6, 7, 9, 10

6 *Del. C.* § 8-102 .............................................................................11, 13

6 *Del. C.* § 8-405 .........................................................................2, 6, 10, 15

6 *Del. C.* § 302 ..........................................................................................................10

Cal. Commercial Code § 8405 ....................................................................................10

**RULES**

Fed. R. Civ. P. 12(b)(6)..................................................................................................6

**OTHER AUTHORITIES**

Jeanne L. Schroeder, *Bitcoin and the Uniform Commercial Code*,
24 U. Miami Bus. L. Rev. 1 (2016) ..............................................................14

Reade Ryan, Mayme Donohue, *Securities on Blockchain*,
73 Bus. L. 85 (2017) .....................................................................................14

## PRELIMINARY STATEMENT

Plaintiff Celacare Technologies, Inc. ("Celacare") contends that Defendant Circle Internet Financial, LLC ("Circle") should voluntarily remit $1 million to Celacare to remedy a $1 million mistake made by Celacare that had nothing to do with Circle. As alleged in the Complaint, Celacare acquired 1 million USDC—a digital asset—from third party Coinbase, Inc. ("Coinbase") in exchange for $1 million. Celacare's President, Kenneth Yates, tried to send the 1 million USDC from Celacare's Coinbase wallet to an unidentified third party. But through the Coinbase interface, he mistakenly transferred the USDC to the wrong address: as alleged, "an arbitrarily chosen Ethereum address," where it remains today. Compl. ¶¶ 39, 41. Celacare claims it is unable to recover the USDC from the Ethereum address that he intentionally, but mistakenly, selected.

Circle has no business being in this case. Circle had nothing to do with these alleged events and is not plausibly alleged to have ever interacted with Celacare prior to their occurrence. Celacare is not a customer of Circle. Circle never custodied Celacare property or participated in any movement of assets on Celacare's behalf. And Celacare readily admits it made a mistake on the internet without any help from Circle. So why did Celacare name Circle as a defendant? Circle issues USDC, and Celacare wants Circle to give it $1 million for free, thereby shifting to Circle responsibility for Celacare's error and loss. Circle did not bargain for this risk with Celacare and has no obligation to remedy Celacare's negligence.

Circle is not responsible for Celacare's error. By its clear terms of service, Circle warns USDC users like Celacare that users bear the risk of USDC transfers on the internet. Circle's terms also plainly advise USDC users that blockchain transactions are irreversible, that transfers to non-Circle wallets are irreversible, and that users "bear all responsibility for any losses that might be incurred as a result of sending USDC to an incorrect or unintended USDC address." Celacare has nevertheless sued Circle, asserting three claims in the alternative, each of which

seeks to recover $1 million from Circle. Each of these claims fails as a matter of law and should be dismissed with prejudice.

In Count I, Celacare alleges that it is entitled to recover $1 million from Circle because it can enforce USDC as a negotiable instrument under 6 *Del. C.* § 3-309. This claim fails on the elements because (1) USDC is not a negotiable instrument—it does not represent an unconditional promise to pay Celacare anything; (2) Celacare was never entitled to redeem the USDC; and (3) Celacare willingly transferred the USDC at issue.

In Count II, Celacare alleges that Circle is required to replace the USDC under 6 *Del. C.* § 8-405 which addresses "replacement of lost, destroyed or wrongfully taken security certificate." This claim fails because: (1) USDC is not a certificated security; (2) the USDC at issue was not lost, destroyed, or wrongfully taken; and (3) Celacare has failed to provide the required indemnity.

Finally, in Count III, Celacare alleges that Circle is required to pay $1 million to Celacare based on a money had and received claim. This claim fails because: (1) in Delaware,[1] money had and received is subsumed by modern law regarding breach of contract; (2) Celacare has no claim for breach of contract against Circle; and (3) even if money had and received were a viable cause of action, Circle is not liable because it did not receive any money from Celacare.

For these reasons, Circle respectfully requests that the Court dismiss Celacare's Complaint with prejudice.

## FACTUAL BACKGROUND

The facts are drawn from the Complaint and the documents incorporated by reference therein.

---

[1] Celacare alleges that Delaware law applies to this dispute. Compl. ¶¶ 54, 86.

### A. The Parties.

Plaintiff Celacare Technologies, Inc. is a Texas corporation. Compl. ¶ 4.

Defendant Circle Internet Financial, LLC is a Delaware limited-liability company headquartered in Boston.

Celacare does not allege it has ever done business with Circle. Rather, it alleges that the transactions relevant to this case were conducted through third party Coinbase, Inc. ("Coinbase"). *Id.* ¶ 37. Coinbase hosts a third-party platform on which users can elect to exchange USDC, but as Celacare acknowledges, Coinbase is a separate entity with no present connection to Circle. *Id.* ¶ 34.

### B. Circle's Publicly Available Terms Govern USDC Transactions.

Circle issues a digital asset called USDC. *Id.* ¶ 16. Information regarding UDSC is publicly available on Circle's website, including the USDC Terms, which are attached as Exhibit A to the Complaint. Celacare acknowledges the USDC Terms govern. *E.g.*, *id.* ¶¶ 3, 23, 33, 34, 54, 55.

As the USDC Terms explain, USDC is fully backed by an equivalent amount of U.S. Dollar-denominated assets held by Circle with U.S. regulated financial institutions in segregated accounts from Circle's corporate funds. Compl. Ex. A § 1 ("About USDC"); Compl. ¶ 26. "[F]or every USDC issued by Circle and remaining in circulation, Circle will hold on behalf of Users either one U.S. Dollar ('USD') or an equivalent amount of USD-denominated assets" in its segregated accounts. Compl. Ex. A §1.

Circle does not promise to redeem USDC to any person holding USDC. Rather, only Circle Mint customers may directly purchase and redeem USDC through Circle. *See id.* § 2. The USDC Terms contain explicit provisions governing the redemption of USDC for U.S. Dollars.

Celacare's allegation that "[a]nyone who wishes to redeem USDC may do so by presenting it to Circle," (Compl. ¶ 22) directly contradicts the USDC Terms, which provide that only users who hold a Circle Mint account may redeem USDC with Circle. Compl. Ex. A § 2 ("You may not redeem USDC with Circle unless and until you open a Circle Mint account."). All other users must redeem USDC for fiat or exchange USDC for another asset with third parties. Celacare does not allege that it holds a Circle Mint account or that it would even qualify to open one. Moreover, even an entity which holds a Circle Mint account must possess the USDC in question and provide it to Circle for redemption. *Id*. at § 13. Ultimately, Circle retains "sole discretion" over whether to redeem USDC. *Id.* § 17.

The USDC Terms also provide that on-chain transactions "[are] irreversible and Circle does not have the ability to reverse or recall any transaction once initiated." *Id.* § 13. In particular, the USDC Terms explain that users "accept all consequences of sending USDC." *Id.* They warn users that "[o]nce you send USDC to an address, you accept the risk that you may lose access to, and any claim on, that USDC indefinitely or permanently." *Id.* The terms even provide as an example that "an address may have been entered incorrectly and the true owner of the address may never be discovered." *Id.* Users are notified that they "bear all responsibility for any losses that might be incurred as a result of sending USDC to an incorrect or unintended USDC address." *Id.*

Additionally, the USDC Terms make clear that using third-party platforms for USDC transactions is inherently risky. *Id.* USDC users "understand and agree that Circle does not control any products or services sold or offered by third parties using the USDC Services" and that "Circle is not liable for any losses or issues that may arise from such third-party

transactions." *Id.* § 14.  Any losses or issues experienced by USDC users that do not hold Circle Mint accounts must be handled "directly with the third-party seller."  *Id.*

### C.      Celacare Allegedly Transferred USDC from One Third-Party Wallet to Another by Mistake.

According to Celacare, in May 2024, "Celacare opened an institutional account with Coinbase" and agreed to Coinbase's Terms of Service.  Compl. ¶¶ 33, 37.  Like the USDC Terms, the Coinbase Terms of Service warned Celacare that "Digital Asset Transfers cannot be reversed once they have been broadcast to the relevant Digital Asset network" and that Coinbase "recommend[s] customers send a small amount of Supported Digital Assets as a test before sending a significant amount of Supported Digital Assets."  Compl. Ex. C §§ 4.1, 4.4.

On July 3, 2024, Celacare gave Coinbase $1 million U.S. Dollars in exchange for 1 million USDC.  Compl. ¶ 38.  The Complaint does not allege that Coinbase transferred any money to Circle or that Circle provided the USDC in question to Coinbase.

Celacare allegedly intended to transfer the 1 million USDC to an unnamed "contract counterparty."  *Id.* ¶ 39.  But Celacare did not make the test transfer recommended by Coinbase.  Rather, Celacare's CEO, Mr. Yates, attempted to immediately send all 1 million USDC to the counterparty's wallet, but he allegedly mistyped the recipient address as a result of a copy-paste error.  *Id.*  Consequently, all 1 million USDC were transferred to the wrong wallet.  *Id.*  The 1 million USDC was not—as Celacare conclusorily alleges—"destroyed."  *E.g.*, *id.* ¶¶ 1, 44, 47, 52, 62, 79, 83, 87, 90.  Celacare admits that the USDC remains in the wallet today.  *Id.* ¶ 41.

### D.      Celacare Seeks Recourse from Circle.

Celacare has never had any relationship with Circle.  Nevertheless, Celacare wants Circle to bear responsibility for Celacare's mistakes.  On August 15, 2024, Celacare sent Circle a draft

complaint and letter demanding $1 million. Circle rejected the demand on September 6, 2024. *Id.* ¶ 91; Compl. Ex. D.

Undeterred, Celacare filed its Complaint on September 9, 2024, naming only Circle as defendant. Celacare has apparently not sought any relief from Coinbase, the entity with which it has a relationship and which facilitated the transaction in question.

The Complaint lodges three claims, asserted in the alternative, against Circle. Count I seeks enforcement of a negotiable instrument under 6 *Del. C.* § 3-309. Compl. ¶¶ 53-68. Count II seeks replacement of a lost or destroyed securities certificate under 6 *Del. C.* § 8-405. *Id.* ¶¶ 69-83. And Count III asserts a claim for "money had and received" under Delaware law. *Id.* ¶¶ 84-93. For the reasons set forth below, each should be dismissed.

## ARGUMENT

On a motion to dismiss under Rule 12(b)(6), courts must evaluate whether the complaint adequately pleads facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In performing this evaluation, courts "assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). But they do not "draw unreasonable inferences or credit bald assertions [or] empty conclusions." *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 348 (1st Cir. 2018). Indeed, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298, 1299 (D. Colo. 2008) (citing *Fernandez–Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993)); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), *cert. denied*, 538 U.S. 999

(2003). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007); *see also, e.g.*, *Guilfoile v. Shields*, 913 F.3d 178, 186-87 (1st Cir. 2019) ("A suit is properly dismissed if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." (quotation omitted)).

"It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Yacubian v. U.S.*, 750 F.3d 100, 108 (1st Cir. 2014); *see also Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 24 (1st Cir. 2002) (rejecting allegations refuted by documents attached to complaint because "[p]ainting a pumpkin green and calling it a watermelon will not render its contents sweet and juicy"). As relevant here, that means that the USDC Terms control over Celacare's contrary allegations.

## I. Celacare Fails to State a Claim for Enforcement of Negotiable Instrument Under 6 *Del. C.* § 3-309 (Count I).

Celacare's Count I seeks to enforce USDC as a "negotiable instrument" under the Delaware Uniform Commercial Code ("UCC"), 6 *Del. C.* § 3-309. Compl. ¶¶ 53-68. Count I fails for several independent reasons: (1) USDC is not a negotiable instrument under Delaware law; (2) even if USDC were a negotiable instrument, Celacare was never entitled to redeem any USDC from Circle; (3) and Celacare willingly transferred possession of the USDC in question.

### A. USDC Is Not a Negotiable Instrument Under Delaware Law.

"To be negotiable, an instrument must: (1) be signed and in writing; (2) contain an unconditional promise to pay a fixed amount in money; (3) be payable to bearer or order on

demand or at a definite time; and (4) contain no other undertaking or instruction to do any act in addition to the payment of money." *Weinstein v. Luxeyard, Inc.*, 2022 WL 130973, at \*5 (Del. Super. Ct. Jan. 14, 2022); 6 *Del. C.* § 3-104(a). USDC does not meet these conditions.

**First**, USDC is not a signed instrument in writing. Celacare makes no contrary allegation. This alone dooms the claim.

**Second**, USDC does not represent an "unconditional" promise to pay Celacare anything. Circle never promised to Celacare that its USDC would be *redeemed*. The USDC Terms expressly condition redemption of USDC from Circle on many conditions.

To start, under the USDC Terms, only a "Holder" of USDC has "the right to redeem USDC for USD funds." Compl. Ex. A. § 2. Celacare admits it is not a "Holder" of USDC; it does not "hold" or possess the USDC tokens at issue, which are allegedly located in a third-party wallet that is inaccessible to Celacare. Compl. ¶ 41. It once held USDC, but no longer does — Celacare made a mistake on the internet and transferred its possession and control of USDC to another. Celacare therefore cannot provide the USDC in exchange for U.S. Dollars.

Moreover, a Holder "may not redeem USDC with Circle *unless and until* [it] open[s] a Circle Mint account." Compl. Ex. A, Preamble & § 2 (emphasis added); *see also id.* ("For the avoidance of doubt, *if a Holder is not eligible to register a Circle Mint account, or fails to do so*, such Holder is not entitled to redeem USDC with Circle . . . . USDC does not itself generate any interest or return for holders of USDC and only represents your right to redeem USDC for an equivalent amount of USD *through your account with Circle*." (emphasis added)). Even if Celacare possessed the USDC tokens at issue, Celacare does not claim to have a Mint Account. It therefore cannot satisfy this additional condition to redeem USDC with Circle.

And even if Celacare held the USDC tokens and had a Mint Account, Circle's terms expressly state that its obligation to redeem USDC remains conditioned on other requirements:

> *[Y]our ability to redeem 1 USD with us for each USDC is conditional* on (i) your possession of a corresponding amount of USDC associated with a registered Circle Mint account, (ii) no violation of these Terms or your Circle Mint account User Agreement, and (iii) no action, pending or otherwise, by a regulator, law enforcement or a court of competent jurisdiction that would restrict redemption.

*Id.* § 13 (emphasis added).

Finally, Circle expressly reserves the right to "decline to process any issuance or redemption without prior notice . . . at any time, in our sole discretion." *Id.* § 17.

In short, Circle never made Celacare an "unconditional promise [. . .] to pay a fixed amount in money." 6 *Del. C.* § 3-104(a). This defeats Count I.

**B.     Count I Fails Because Celacare Was Never Entitled to Redeem USDC.**

"A person not in possession of an instrument[2] is entitled to enforce the instrument if the person was in possession of the instrument and entitled to enforce it when loss of possession occurred." 6 *Del. C.* § 3-309(a).

As discussed above, Celacare has never been entitled to redeem USDC because, among other things, it does not have a Circle Mint account. *Supra* at 4, 8. Therefore, even when Celacare possessed the USDC in question, and even if USDC were a negotiable instrument, Celacare was never entitled to redeem the USDC with Circle. Count I fails for this additional reason.

---

[2] As used in 6 *Del. C.* § 3-309(a), the term "'instrument' means a negotiable instrument." 6 *Del. C.* § 3-104(b).

**C.      Count I Fails Because Celacare Willingly Transferred Possession of the USDC.**

For a person to enforce a lost, destroyed, or stolen instrument under 6 *Del. C.* § 3-309(a), "the loss of possession" must not have been "the result of a transfer by the person."[3]  Celacare's own allegations defeat this essential element of the claim.  According to Celacare, its CEO "in fact sent th[e] USDC to an arbitrarily chosen Ethereum address."  Compl. ¶ 39; *id.* n.1. (describing "[t]he transaction Yates caused to occur").  As Celacare willingly transferred the USDC at issue here, its claim under 6 *Del. C.* § 3-309(a) fails.

**II.     Celacare Fails to State a Claim for Replacement of Lost or Destroyed Securities Certificate Under 6 *Del. C.* § 8-405 (Count II).**

In Count II, Celacare seeks replacement of a lost or destroyed securities certificate under 6 *Del. C.* § 8-405 or Cal. Commercial Code § 8405.  Compl. ¶¶ 69-83.  Under these two sections, the owner of (1) a certificated security (2) that has been lost, destroyed, or wrongfully taken may be issued a new certificate if, among other things, (3) the owner files with the issuer a sufficient indemnity bond.  6 *Del. C.* § 8-405; Cal. Comm. Code § 8405.  Celacare fails to allege that any of these elements has been satisfied.

**A.      Count II Fails Because USDC Is Not a Certificated Security.**

USDC is not a "security" under the Delaware UCC.  Celacare does not cite any case law in support of its novel theory that stablecoins like USDC are securities under the UCC.  Celacare relies upon Title 6 of the UCC, defines a "security" as:

> an obligation of an issuer or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer:

---

[3]  The term "person" includes "corporations, companies, associations, firms, partnerships, societies and joint-stock companies, as well as individuals."  6 *Del. C.* § 302.

(6) which is represented by a security certificate in bearer or registered form, or the transfer of which may be registered upon books maintained for that purpose by or on behalf of the issuer;

(ii) which is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations; and

(iii) which: (A) is, or is of a type, dealt in or traded on securities exchanges or securities markets; or (B) is a medium for investment and by its terms expressly provides that it is a security governed by this Article.

6 *Del. C.* § 8-102(a)(15). These definitions provide no support for Celacare's conclusory contention that USDC is a "security"—indeed, the Complaint is devoid of allegations supporting that any of the above applies here.

As discussed above, USDC do not represent any form of share, participation, or interest in Circle; by owning USDC, Celacare does not become any kind of shareholder in Circle. And the USDC Terms do not oblige Circle to redeem USDC or provide Celacare with an interest in any property owned by Circle. *Supra* at 6-7. Additionally, USDC is not represented by a security certificate in bearer or registered form. USDC is not one of a class of securities or divisible into a class or series of shares, participations, interests, or obligations. USDC is not or of a type dealt in or traded on securities exchanges or securities markets, and is not a medium for investment by its terms. Indeed, as discussed in detail below, Celacare cannot credibly argue that USDC is a security under the UCC—specifically, one "of a type, dealt in or traded on securities exchanges or securities markets" under Section 102(a)(15)(iii)—because USDC is not regarded as "investment security" under federal law. Therefore, USDC is not a security under the Delaware UCC.

Yet, citing to the USDC Terms, Celacare claims USDC is a security because "[Circle] will always redeem . . . USDC at a rate of one USD ($1) per one (1) USDC." Compl. ¶ 55. The allegation misleadingly omits the words "when Circle redeems USDC for USD" that appear at

the beginning of the quoted clause.  Compl. Ex. A § 13.  In context, the cited provision applies

only after a user satisfies the requirements for redemption (e.g., they have a Mint Account, are a

Holder of the USDC tokens to be redeemed, provide the USDC to Circle for redemption), and

Circle agrees to redeem the USDC—a decision fully within its "sole discretion."  *Id.* § 17.  By

no means does Circle promise to redeem any USDC tokens that anyone claims to own—even

less so when the alleged owner does not provide the tokens for redemption.  Thus, a USDC token

is not a promise or obligation by Circle to redeem the USDC and does not reflect a right to

Circle's property.  As alleged, Celacare's claims that USDC is a security based on a redemption

right fails.  Moreover, even if Celacare had a direct redemption right with Circle, this does not

transform USDC into a security under the UCC because USDC is not any kind of medium for

investment by Celacare in Circle.

And Celacare's claim cannot be saved because under no circumstance is USDC a security

under any other definition of security.  Holders of USDC have no expectation of profit from

Circle.  *See, e.g.*, *id.* § 1 ("USDC is not designed to intrinsically create returns for holders,

increase in value, or otherwise accrue financial benefit to the USDC holder.").  Far from ensuring

returns from USDC, Circle only promises to fully reserve issued USDC tokens in segregated

accounts (not Circle's corporate accounts), and this promise remains unbroken with respect to

misplaced tokens.  But this promise to reserve issued tokens for holders like Celacare does not

transform USDC into a security, certificated or otherwise.  At no point are USDC users like

Celacare "entitled to any interest or other returns earned on such funds" that Circle generates

from the USDC Reserves.  *Id.* § 2.

And as at least one court has recognized, "where a stablecoin is designed exclusively to

maintain a one-to-one peg with another asset, there is no reasonable basis for expecting that the

tokens—if used as stable stores of value or mirrored shares traded on public stock exchanges—would generate profits through a common enterprise." *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 4858299, at *1, *12 (S.D.N.Y. July 31, 2023). For that reason alone, USDC is a "currency" or "cash substitute" that can be "redeemed" for USD, and *not* a "security." *See Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686 n.1 (1985); *C.N.S. Enters. v. G. & G. Enters.*, 508 F.2d 1354, 1363 (7th Cir. 1975).

Indeed, federal courts have recognized that digital tokens like USDC—a stablecoin that functions as digital equivalent of USD—are assets and *not* securities. *See, e.g.*, *SEC v. Ripple Labs., Inc.,* 682 F. Supp. 3d 308, 324 (S.D.N.Y. July 13, 2023) (XRP digital asset "is not in and of itself" an investment contract); *SEC v. Telegram Grp., Inc.*, 448 F. Supp. 3d 352, 379 (S.D.N.Y. 2020) (describing digital assets as "little more than alphanumeric cryptographic sequence[s]"); *see also Sec. & Exch. Comm'n v. Binance Holdings Ltd.*, 2024 WL 3225974, at *11 (D.D.C. June 28, 2024) (finding that a stablecoin was not offered or sold as an investment contract because there was no "suggestion that purchasers were informed that the proceeds from BUSD sales were to be deployed, through the issuers' managerial and entrepreneurial efforts, to generate a return for *their* benefit"). This makes good sense with respect to USDC because users do not purchase and use USDC for an *investment* purpose—i.e., the fundamental purpose of securities regulation, *see, e.g.*, *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953)—or have any expectation of profit therefrom. *See SEC v. Life Partners, Inc.*, 87 F.3d 536, 542 (D.C. Cir. 1996) (explaining a "security" in the form of an investment contract exists where there is an expectation of profits arising from a common enterprise that depends on the efforts of others (which definition is not met here)).

Even if USDC were considered a security, it would not be a certificated security. A certificated security is a security that is represented by a certificate. 6 *Del. C.* § 8-102(a)(4). In contrast, an "'[u]ncertificated security' means a security that is not represented by a certificate." 6 *Del. C.* § 8-102(a)(18). Uncertificated securities are "essentially a book entry on the issuer's stock ledger and transfers of interests." *Pan Ocean Navigation, Inc. v. Rainbow Navigation, Inc.*, 1987 WL 13519, at *5 (Del. Ch. 1987).

USDC is uncertificated because it is not represented by any certificate. Rather, as acknowledged by Celacare, USDC transactions are recorded in an online "ledger" called a "blockchain." Compl. ¶¶ 8, 11. In other words, USDC transactions are "essentially a book entry" on the blockchain ledger and are therefore uncertificated. While Circle is not aware of any case in which a Court has been asked to determine whether a cryptocurrency is certificated, academic authorities agree that it is not. *See* Jeanne L. Schroeder, *Bitcoin and the Uniform Commercial Code*, 24 U. Miami Bus. L. Rev. 1 (2016) at 2, 9, 69 ("cryptosecurities fall squarely within Article 8's definition of 'uncertificated securities.'"); Reade Ryan, Mayme Donohue, *Securities on Blockchain*, 73 Bus. L. 85, 96 (2017) ("a digital security on a blockchain would be just that, a 'security that is not represented by a certificate,' and so would be an 'uncertificated security' under UCC Article 8"). The blockchain serves "simply as a registration of the chain of ownership" like a stock register does for ownership of corporate shares. Ryan & Donohue, *Securities on Blockchain*, at 96.

In an effort to save Count II, Celacare alleges that "USDC . . . are represented by a security certificate . . . in bearer form." Compl. ¶ 75. This bare (and novel) allegation, unsupported by any facts or law, cannot survive a motion to dismiss. It is also incorrect: holders of USDC do

not possess—or bear—any certificate.  As discussed, USDC holdings are recorded on the blockchain.  Compl. ¶¶ 8, 10-12, 14.  As USDC is an uncertificated security, Count II fails.

**B.      Count II Also Fails Because the USDC at Issue Has Not Been Lost, Destroyed, or Wrongfully Taken.**

To state a claim under 6 *Del. C.* § 8-405, Celacare must allege that the USDC has been lost, destroyed, or wrongfully taken.  None of that has happened here.  Celacare admits that it knows exactly where the USDC is located: in the wallet address identified in the Complaint.  Compl. ¶¶ 39, 47, n.1.  The USDC is not lost or destroyed.  It remains in that wallet.  *Id.* ¶ 41.  Nor was the USDC wrongfully taken.  Celacare admits that it voluntarily initiated the transfer.  *Id.* ¶ 39.  For these additional reasons, Count II fails.

**C.      Count II Also Fails Because Celacare Has Not Posted a Bond.**

Finally, a claim under 6 *Del. C.* § 8-405 requires that Celacare file with Circle "a sufficient indemnity bond" in order to protect Circle against the risk of liability to third parties.  Uniform Laws Annotated, U.C.C. § 8-405 Form 1, cmt. (2015).  Because Celacare has not yet posted an indemnity bond with Circle, Count II fails for this reason as well.  *See Mergenthaler v. Enzolytics, Inc.*, 2022 U.S. Dist. LEXIS 147023, at *10 (D. Del. Aug. 17, 2022) (dismissing claim on motion to dismiss where plaintiff failed to file a bond); *Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 327 (Mo. Ct. App. 2017) ("[T]he Moores' failure to plead the bond element of Section 400.8-405 was fatal to Count II of their petition."); *Liberte Capital Grp., LLC v. Capwill*, 2004 U.S. Dist. LEXIS 35449, at *21 (N.D. Ohio Dec. 8, 2004) (§ 8-405 not enforceable until "[r]eceiver posts an indemnity bond").

Celacare alleges that it should not have to post an indemnity bond because Circle "has no risk of liability from the destroyed USDC."  Compl. ¶ 83; *see id.* ¶¶ 42-50.  Not so.  Celacare's claim that no one can access the wallet is entirely speculative and conclusory.  Further, Circle—

an innocent bystander—is not required to assume the risk of a third party accessing the USDC in question.

Circle's alleged ability to issue an access denial on the wallet does not change the analysis. *Id.* ¶¶ 45, 47, 65, 88. An access denial does not protect Circle against claims by third parties that the USDC in question rightfully belongs to them. In fact, it exposes Circle to such claims.

In short, Count II fails because Celacare has not posted any bond, and because its allegation that a nominal bond is sufficient in this case is unsupported and should be disregarded.

### III. Celacare Fails to State a Claim for Money Had and Received Under Delaware Law (Count III).

Finally, Celacare cannot state a claim for "money had and received" under Delaware law. This "ancient cause of action" is "no longer a legally cognizable claim," and instead, "subsumed by modern law regarding breach of contract." *St. Search Partners, L.P. v. Ricon Int'l, L.L.C.*, 2005 WL 1953094, at *1, *4 (Del. Super. Ct. Aug. 1, 2005); *Fleet Nat. Grp., Inc. v. Advanta Corp.*, 2001 WL 1333405, at *5 (Del. Ch. Oct. 15, 2001) (declining to address claim for "money had and received" that "rest[ed] on the same facts that are the subject of Fleet's Count IX contract claim" after already deciding there was a contract breach warranting damages). As discussed above, Celacare has no contractual right to recover money from Circle. Among other things, Celacare does not allege that it holds the USDC at issue or a Circle Mint Account. *Supra* at 3, 5. For this reason alone, Count III should be dismissed.

Further, even if the Court were to entertain the purported claim for money had and received, Celacare does not state a claim. Historically, money had and received allowed recovery "[w]herever a man has in his hands money belonging to another which he cannot equitably retain and he either promises or the law can raise an implied promise to pay it, it may be recovered in

this form of action." *Guthrie v. Hyatt*, 1 Del. 446 (Jan. 1, 1834). The claim could not be brought "against third parties who did not receive money from the plaintiff." *Ricon Int'l, L.L.C.*, 2005 WL 1953094, at *1.

Here, Celacare does not allege that Circle "has in [its] hands" any money belonging to Celacare. As Celacare's own allegations make clear, it never transmitted any money to Circle. The Complaint alleges that Coinbase—not Circle—was the recipient of all Celacare funds, and that the wallet was the recipient of the transferred USDC. *See* Compl. ¶¶ 1-2, 38-41.[4] Celacare acknowledges that the USDC in which it purports to have an interest remains in the wallet, which Circle does not control and cannot access. *Id.* ¶¶ 41-52.

Moreover, Circle has not been enriched by Celacare's transfer. The USDC in question still exists in a known location. It has not been destroyed and is still appropriately supported by Circle's USDC reserves; indeed, Circle must back the USDC tokens whether they are held by Plaintiff, the owner of the wallet, or anyone else. Celacare's claim amounts to asking Circle to assume the risk of Celacare's mistake and remit $1 million of Circle's own money to Celacare. The allegations do not state a claim for "money had and received" or any other claim.

## CONCLUSION

For the foregoing reasons, Circle respectfully requests that the Complaint be dismissed with prejudice.

---

[4] In the money had and received claim, Celacare alleges—apparently mistakenly—that "Celacare transferred one million dollars to Circle." Compl. ¶ 85. This allegation should be disregarded because it is inconsistent with Celacare's earlier allegation that it "transferred one million U.S. Dollars to Coinbase." *Id.* ¶ 38; *see Colesanti v. Dickinson*, 2019 U.S. Dist. LEXIS 145578, at *14 (D.R.I. July 19, 2019) ("Factual allegations that appear to be internally inconsistent with other well-pled factual allegations must also be set aside."). This allegation is also implausible on its face because Celacare does not allege any business relationship with Circle or that it has a Circle Mint account, which are prerequisites to Celacare transmitting any money directly to Circle.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Circle believes that oral argument may assist the Court and hereby requests that the Court schedule a hearing on the foregoing motion to dismiss.

Dated: October 18, 2024

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ *Matthew D. Gorman*
Matthew D. Gorman (#569406)
One Boston Place
201 Washington Street
Boston, Massachusetts 02108
Telephone: (212) 497-7786
Email: mgorman@wsgr.com

*Counsel for Defendant Circle Internet Financial, LLC*

OF COUNSEL:

Joshua A. Baskin
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Email: jbaskin@wsgr.com