IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CELACARE TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CIRCLE INTERNET FINANCIAL, LLC, <br><br> Defendant. | Civil Action No. 1:24-cv-12322-RGS <br><br> Jury Trial Demanded |

**REPLY BRIEF IN FURTHER SUPPORT OF
<u>CIRCLE INTERNET FINANCIAL, LLC'S MOTION TO DISMISS</u>**

OF COUNSEL:

Joshua A. Baskin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Email: jbaskin@wsgr.com

November 12, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Matthew D. Gorman (#569406)
One Boston Place
201 Washington Street
Boston, Massachusetts 02108
Telephone: (212) 497-7786
Email: mgorman@wsgr.com

*Counsel for Defendant Circle Internet Financial, LLC*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .....................................................................................................................................2

I.   Celacare Abandoned Its Claim Under Section 3-309 (Count I), So It Should Be Dismissed With Prejudice. ..................................................................................................2

II.  Celacare Fails to State a Claim Under Section 8-405 (Count II). ........................................2

    A.   USDC Is Not a Security Under the UCC. .............................................................. 3

        1.   USDC is not an "obligation of" Circle. ........................................................3

        2.   USDC is not divisible or of a type traded on securities exchanges. .............5

    B.   USDC Are Not "Certificated." ................................................................................ 7

    C.   Celacare Otherwise Fails to Satisfy Section 8-405. ................................................ 9

III. Celacare's Money Had and Received Claim (Count III) Must Be Dismissed. ....................9

CONCLUSION ....................................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*C.N.S. Enters. v. G. & G. Enters.*,
    508 F.2d 1354 (7th Cir. 1995) ...........................................................................................5

*Chumash Cap. Invs., LLC v. Grand Mesa Partners, LLC*,
    2024 WL 1554184 (Del. Super. Ct. Apr. 10, 2024) ........................................................10

*Diaz-Zayas v. Municipality of Guaynabo*,
    600 F. Supp. 3d 184 (D.P.R. 2022) ...................................................................................9

*Landreth Timber Co. v. Landreth*,
    471 U.S. 681 (1985) ..........................................................................................................5

*Mergenthaler v. Enzolytics, Inc.*,
    2022 WL 3444949 (D. Del. Aug. 17, 2022) ......................................................................9

*Pan Ocean Navigation, Inc. v. Rainbow Navigation, Inc.*,
    1987 WL 13519 (Del. Ch. 1987) .......................................................................................7

*SEC v. Terraform Labs Pte. Ltd.*,
    684 F. Supp. 3d 170 (S.D.N.Y. July 31, 2023) ..................................................................5

*Secure Our City, Inc. v. ECI Sys., LLC*,
    594 F. Supp. 3d 96 (D. Mass. 2022) ..................................................................................9

*St. Search Partners, L.P. v. Ricon Int'l, L.L.C.*,
    2005 WL 1953094 (Del. Super. Ct. Aug. 1, 2005) ............................................................9

*Ventura v. Circle Internet Financial, LLC, et al.*,
    C.A. No. 2023-1227-NAC (Del. Ch. Nov. 4, 2024) (TRANSCRIPT) .............................5

*Vichi v. Koninklijke Philips Elecs. N.V.*,
    62 A.3d 26 (Del. Ch. 2012) ...............................................................................................9

## STATUTES

6 *Del. C.* § 3-309 ........................................................................................................................2

6 *Del. C.* § 8-102 .................................................................................................................3, 6, 7

6 *Del. C.* § 8-103 ........................................................................................................................4

6 *Del. C.* § 8-405 ................................................................................................................ *passim*

U.C.C. § 12-101 (Am. L. Inst. & Unif. L. Comm'n 2022) ..........................................................8

## OTHER AUTHORITIES

Jeanne L. Schroeder, *Bitcoin and the Uniform Commercial Code*,
   24 U. Miami Bus. L. Rev. 1 (2016) ...........................................................................7

Reade Ryan, Mayme Donohue, *Securities on Blockchain*,
   73 Bus. L. 85 (2017) ................................................................................................7

Ronald A. Spinner, *Caution—Construction Ahead: Reworking the UCC for
   Cryptocurrencies*, J. Bankr. L. & Prac. 1, NL Art. 3 (Feb. 2023) ....................7, 8

**PRELIMINARY STATEMENT**

Celacare's complaint asks the Court to do something that no court has ever done before: rule that a stablecoin is a certificated security under the UCC's investment securities Article and subject to a right of replacement if it is lost, destroyed, or wrongfully taken. Celacare's strained attempt to use Article 8 is the proverbial square peg in a round hole, and this Court should not upend an entire industry and ignore clearly laid out contractual risk apportionment because Celacare's CEO was negligent.

Article 8 of the UCC is intended to cover investment products. It was never intended to cover stablecoins like USDC, which are not investment products and instead maintain a 1-1 peg to US dollars and do not yield returns for holders. As a form of electronic money, stablecoins like USDC are governed by state money transmission laws—not Article 8 of the UCC. Accordingly, Celacare's principal claim under Section 8-405 of the UCC (Count II) should be dismissed because, among other things, USDC is not a "security" subject to Article 8 of the UCC and because Celacare cannot plead facts that fit the elements of Section 8-405.

Indeed, the USDC Terms make clear that USDC is not a "certificated security" as required by Section 8-405 because Circle has no obligations consistent with an issuer of a certificated security and Celacare enjoys no rights consistent with a holder of a certificated security. Celacare and Circle have never had any relationship: Celacare does not (and cannot) claim that it has held an account with Circle. To the extent Celacare possessed USDC, its right to redeem USDC was governed by the USDC Terms. But Celacare does not like those terms because they do not grant Celacare any right to redeem from Circle (and moreover, explicitly apportioned the risk to Celacare for the alleged loss that Celacare's CEO caused). Therefore, Celacare attempts to use the UCC to rewrite the USDC Terms to eliminate provisions it does not like. The Court should reject Celacare's prayer for this extraordinary relief.

1

The Court should also reject Celacare's repeated accusation that Circle obtained an "unjustified windfall" of $1 million of Celacare's money. Celacare, not Circle, seeks the windfall here. Celacare's "money had and received" claim (Count III) should therefore be dismissed. Putting aside that the claim is no longer recognized as a matter of law, Circle has never received any money from Celacare. And Celacare's belated effort to recast the claim as one for unjust enrichment is both procedurally improper and legally deficient under the controlling USDC Terms. Celacare's attempt to shift responsibility for its mistakes to Circle should be rejected.

Accordingly, Circle respectfully requests that the Court dismiss Celacare's Complaint with prejudice, including Count I, which Celacare voluntarily abandons.

## ARGUMENT

### I. Celacare Abandoned Its Claim Under Section 3-309 (Count I), So It Should Be Dismissed With Prejudice.

The parties agree Count I for enforcement of USDC as a "negotiable instrument" under UCC Section 3-309 should be dismissed. *See* Opp. at 4 n.2. But contrary to Celacare's request, Count I should be dismissed with prejudice. Celacare makes no effort to address the well-founded arguments set forth in Circle's Motion, including that USDC is not a negotiable instrument (*see* Mot. at 7–10); therefore, Count I should be rejected on its merits.

### II. Celacare Fails to State a Claim Under Section 8-405 (Count II).

To plead Count II, Celacare must establish that (1) USDC is a certificated security; (2) that the USDC has been lost, destroyed, or wrongfully taken; and (3) that it has committed to a sufficient indemnity bond. Even taking the Complaint as true, Celacare cannot establish any of these elements.

2

### A. USDC Is Not a Security Under the UCC.

As explained in Circle's Motion, USDC does not meet the definition of "security" set forth in Article 8 of the UCC because USDC is not (1) an obligation of Circle; (2) "one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations"; or (3) "dealt in or traded on securities exchanges and securities markets." 6 *Del. C.* § 8-102(a)(15).

#### 1. USDC is not an "obligation of" Circle.

To qualify as a security, USDC must be "an obligation of an issuer or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer." *Id.* Celacare does not claim that USDC is a "share, participation or other interest" or the "property or an enterprise of" Circle. It relies solely on the argument that USDC is an obligation of Circle as an "issuer." Opp. at 7. But the plain language of the USDC Terms clearly lay out the conditions under which Circle will redeem USDC (which Celacare does not meet), as well as Circle's obligations and discretion relating to redeeming USDC. Mot. at 3–4, 11–12. As the USDC Terms make clear, to redeem USDC, a user must (1) have a Circle Mint Account, and (2) possess the USDC in question. Compl. Ex. A §§ 2, 13. Even then, Circle retains "sole discretion" over whether to redeem USDC. *Id.* § 17. Simply, Circle is not obligated to redeem USDC for US dollars to users like Celacare.[1]

In its opposition, Celacare makes a new argument out of whole cloth that the UCC "requires only that something be an 'obligation' to be a security, not that it be an obligation free

---

[1] Celacare accuses Circle of twisting the meaning of the USDC Terms so it can "claim for itself the full and absolute discretion to deny any of its millions of users the right to redeem their money" and "run off with their money." Opp. at 8. This accusation has no basis in fact. There is no plausible allegation in this case—or anywhere—that Circle has ever "run off" with customers' money. Celacare does not (and cannot) even allege that it has *ever* provided any money to Circle. *See* Mot. at 17 n.4.

3

from *any* conditions." Opp. at 8 (citing no authority). Celacare argues that because sometimes Circle agrees to redeem USDC, that creates an "obligation" for Circle to redeem USDC sufficient to meet the first part of the Article 8 test for a security. As stated, that is wrong under the plain USDC Terms, which do not oblige Circle to redeem USDC to Celacare. *See supra* at 1, 3. On that basis, Count II fails.

But even if it were true that Circle has an "obligation" to redeem USDC in certain cases, Celacare's position exposes a hole in its claim under Section 8-405, which requires Celacare to satisfy "other reasonable requirements imposed by the issuer." 6 *Del. C.* § 8-405(a)(3). Therefore, unless Celacare satisfies Circle's reasonable conditions to redeem USDC, it cannot state a claim. As discussed in the Motion, Celacare cannot satisfy those conditions, including obtaining a Circle Mint account—something it has not pled and cannot plausibly argue is not a reasonable condition.[2] Mot. at 4; Compl. Ex. 7; Opp. at 8.

Finally, Celacare's focus on "the structure" of the UCC is for naught. UCC Article 8 is titled "Investment Securities." As Plaintiff acknowledges, Article 8 was meant to cover "*investment products* that now exist or may develop." Opp. at 5 (emphasis added); *see also* 6 *Del. C.* § 8-103 cmt. 1 (definition of security is "worded in general terms, because [it] must be sufficiently comprehensive and flexible to cover the wide variety of *investment products* that now exist or may develop" (emphasis added)). As explained in the Motion, USDC is not an investment product by its terms and design. Mot. at 12–13 (explaining holders of USDC have

---

[2] Celacare downplays the requirement that it open a Circle Mint account to redeem USDC, arguing that "registering for a Circle Mint account requires no more than click-wrap agreeing to some boilerplate and complying with know-your-customer rules." Opp. at 8 (citing but not quoting Compl. Ex. A at 1). Opening a Circle Mint account is not as easy as Celacare suggests. Only qualified entities may open Circle Mint accounts, and as Celacare acknowledges, "Circle reserves for itself the discretion to deny registration." *See* Circle, *Circle Mint* (last visited Nov. 6, 2024) ("Circle Mint is offered to registered businesses in specific regions who will mint and distribute USDC at scale. This product is not offered to retail consumers . . . ."), https://www.circle.com/circle-mint. Circle does not allege that it could qualify—and does not qualify—to open a Circle Mint account to be eligible to redeem USDC from Circle. Mot. at 3–4; Compl. Ex. A § 2.

no expectation of profits from Circle and USDC does not yield interest or returns to holders, and identifying considerable federal securities cases finding stablecoins are not investment contracts). Celacare does not rebut this or plead that USDC is used as an investment medium. Thus, Article 8's structure suggests, if anything, that USDC should not be regarded as a security.

Far from ensuring returns from USDC, Circle's responsibility to USDC users is to fully reserve issued USDC tokens in segregated accounts (not Circle's corporate accounts) in order to maintain their 1-1 exchange rate with US dollars. That charge does not transform USDC into a security. Quite the opposite: it makes USDC more akin to currency, which is not a security under the UCC. *SEC v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 194 (S.D.N.Y. July 31, 2023) ("where a stablecoin is designed exclusively to maintain a one-to-one peg with another asset, there is no reasonable basis for expecting that the tokens—if used as stable stores of value . . .— would generate profits through a common enterprise"); *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686 n.1 (1985) ("currency" is *not* a "security"); *C.N.S. Enters. v. G. & G. Enters.*, 508 F.2d 1354, 1363 (7th Cir. 1995) ("currency" incudes "cash substitute" that can be "redeemed" for dollars). Indeed, just last week, the Delaware Court of Chancery recognized that USDC is akin to money given its 1-1 peg to US dollars. *See* Transcript at 4–5, *Ventura v. Circle Internet Financial, LLC, et al*., C.A. No. 2023-1227-NAC (Del. Ch. Nov. 4, 2024) (explaining that "one [USDC] is intended to be always equivalent to one U.S. dollar" so an action seeking reissuance of lost USDC "amounts to the payment of money which has a direct correlation to U.S. dollars").

### 2. USDC is not divisible or of a type traded on securities exchanges.

Nor does USDC satisfy two of Article 8's other requirements to be a security: it is not divisible or of a type traded on securities exchanges. *See* Opp. at 9–10. USDC is not "divisible into a class or series" as required by the UCC; Celacare's note that there are "34 billion identical

5

and fungible USDC" (*id.* at 9) is irrelevant.  USDC is not sold in a class or series.  Moreover, USDC is not "divisible" because Circle's issuance and redemption of USDC are carefully controlled and expressly governed by its USDC Terms and thus are not "distinguished from individual obligations of the sort governed by ordinary contract law."  6 *Del. C.* § 8-102, cmt. 15; Mot. at 3; *supra* at 1, 3–4.

That USDC is more akin to currency further dispels Celacare's contention that USDC is "divisible" and "of a type, dealt in or traded on securities exchanges or securities markets."  As laid out in Circle's Motion, federal courts have concluded stablecoins are not fairly characterized as "securities" that are traded on the market because they maintain a 1-1 peg to US dollars and are not bought for any investment purpose.  *See* Mot. at 12–13 (collecting cases).

Celacare argues that USDC is "of a type traded on securities exchanges" because it is traded on third-party Coinbase's exchange, which allegedly has opted into being a "securities intermediary" for purposes of Article 8.  *See* Opp. at 10.  That does not mean USDC is a security.  Section 2.7.2 of Coinbase's User Agreement says as much, stating that Supported Digital Assets traded on Coinbase will be "financial assets" under Article 8, which are not the same as securities.  Compl. Ex. C § 2.7.2.  Moreover, Section 2.7.2 expressly does not govern or dictate the "characterization of" any other business or transaction for purposes of Article 8.  *Id.*

Finally, Celacare's allegation that Circle "explicitly agreed to treat assets traded on Coinbase as 'securities' for purposes of UCC Article 8" is utterly unfounded.  Opp. at 10 (citing Coinbase User Agreement, Compl. Ex. C § 2.7.2 & Compl. ¶ 36).  Section 2.7.2 of the Coinbase user agreement is not an agreement by Circle to anything.  Celacare's conclusory allegation that such an agreement exists "on information and belief" should be disregarded.  Compl. ¶ 36.

6

B.     USDC Are Not "Certificated."

Even if USDC was considered a "security" under the UCC, it is not certificated, which defeats Celacare's Section 8-405 claim.  6 *Del. C.* §§ 8-102(a)(4), 8-405.  Uncertificated securities are "essentially a book entry on the issuer's stock ledger and transfers of interests." *Pan Ocean Navigation, Inc. v. Rainbow Navigation, Inc.*, 1987 WL 13519, at *5 (Del. Ch. 1987). That is exactly the case here.  USDC is not represented by any certificate.  Instead, transactions are simply recorded on the blockchain.  Compl. ¶ 8.  This process is similar to US dollar debits and credits being recorded on a bank ledger.  Just as there is no certificate to evidence ownership of US dollars, there is no certificate to represent ownership of USDC.  USDC is uncertificated.

Celacare concedes that no Court has found that USDC is a certificated security, but it also cites to no other authority of any sort that USDC should be considered certificated.  Instead, the authority directed to the question on the categorization of crypto-assets rejects Celacare's claim. *See* Jeanne L. Schroeder, *Bitcoin and the Uniform Commercial Code*, 24 U. Miami Bus. L. Rev. 1 (2016) at 2, 9, 69 ("cryptosecurities fall squarely within Article 8's definition of 'uncertificated securities.'"); Reade Ryan, Mayme Donohue, *Securities on Blockchain*, 73 Bus. L. 85, 96 (2017) ("a digital security on a blockchain would be just that, a 'security that is not represented by a certificate,' and so would be an 'uncertificated security' under UCC Article 8").

Celacare tries to distinguish this authority by claiming that it does not address the new UCC Article 12 category of "controllable electronic records" or CERs, adopted by Delaware in 2022.  Opp. at 12.  This detour does not help Celacare.  First, the Complaint includes no claim that Article 12 provides Celacare any rights vis-à-vis Circle.  Second, even if USDC were subject to Article 12, that would not make it a security under Article 8.  CERs themselves are not securities for purposes of Article 8.  Ronald A. Spinner, *Caution—Construction Ahead:*

7

*Reworking the UCC for Cryptocurrencies*, 32 J. Bankr. L. & Prac. 1, NL Art. 3 (Feb. 2023) ("The Amendments make clear that parties can agree to treat cryptocurrency under Article 8. A CER is not a security, however; it is only a 'financial asset' under Article 8 if a 'securities intermediary' expressly agrees with a person to treat that person's CER as a financial asset in accord with Article 8 of the UCC."). Third, even if a USDC is a CER and a CER is a security, it would not be a certificated security as set forth above.[3]

Unable to find any authority that USDC is certificated, Celacare attempts a textualist interpretation of Article 8, starting with the proposition that a certificate must be in writing and ending with the claim that the writing can be anything under the sun, including a blockchain ledger. Opp. at 10–11. This specious argument is contradicted by the authority cited above that, where blockchain and other ledgers are used to track ownership of securities, those securities are uncertificated. *Supra* at 7. If Celacare's argument that any writing signifying ownership of a security is a certificate were correct, there would be no such thing as an uncertificated security.

Finally, Celacare argues that because users can possess USDC, that means it is certificated. Opp. at 11–12. That is a willful misstatement of how USDC works. There is no certificate issued by Circle for each USDC token. Circle issues USDC tokens, the blockchain records USDC transactions between wallets, and the USDC is stored in the wallets. Compl. ¶¶ 8, 14, 16. A USDC holder accesses USDC by using the private key associated with his wallet, not by using information provided by Circle. *Id.* ¶ 15. The private key is not a certificate issued or controlled by Circle. Rather, as Celacare admits, it is generated by the user who creates the wallet. *Id.* ¶ 13. If a USDC holder loses his private key, he loses access to the wallet. *Id.* ¶ 15.

---

[3] The UCC discusses CERs solely in the context of transactions involving *uncertificated* securities. U.C.C. § 12-101, official cmt. 2 (amended 2022) (Am. L. Inst. & Unif. L. Comm'n 2022) (discussing potential relationship between CERs and securities, and noting only the "roles that controllable electronic records may play in transactions involving *uncertificated* securities" (emphasis added)).

### C. Celacare Otherwise Fails to Satisfy Section 8-405.

Count II should also be dismissed because (i) the USDC has not been lost, destroyed, or wrongfully taken, and (ii) Celacare has not committed to a sufficient indemnity bond. 6 *Del. C.* § 8-405. Celacare's contention that it has "lost or destroyed" the USDC is implausible. *See* Opp. at 13–14. The USDC is not lost or destroyed: the Complaint itself points directly to where it is located, fully intact. Finally, Count II fails because Celacare still has not posted a bond. Celacare cites no authority for the proposition that it need not post a bond unless and until it prevails. To the contrary, failure to post a bond is grounds for pleadings-stage dismissal. *Mergenthaler v. Enzolytics, Inc.*, 2022 WL 3444949, at *4 (D. Del. Aug. 17, 2022) (dismissing complaint at the pleading stage where plaintiff failed to post a bond).

### III. Celacare's Money Had and Received Claim (Count III) Must Be Dismissed.

Finally, the Opposition does not salvage Celacare's claim for "money had and received," which is "no longer a legally cognizable claim." *St. Search Partners, L.P. v. Ricon Int'l, L.L.C.*, 2005 WL 1953094, at *1, *4 (Del. Super. Ct. Aug. 1, 2005). Having no response, Celacare attempts to recast Count III as a claim for unjust enrichment. *See* Opp. at 16–20. That is improper. The Complaint does not plead an unjust enrichment claim. Celacare cannot amend through briefing. *See, e.g.*, *Diaz-Zayas v. Municipality of Guaynabo*, 600 F. Supp. 3d 184, 195 (D.P.R. 2022) ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Moreover, any attempt by Celacare's to amend and include an "unjust enrichment" claim would be futile. "It is a well-settled principle of Delaware law that a party cannot recover under a theory of unjust enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim." *E.g.*, *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58–59 (Del. Ch. 2012); *see also Secure Our City, Inc. v. ECI Sys., LLC*, 594 F. Supp. 3d

9

96, 106 (D. Mass. 2022) ("Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment." (quotation omitted)).  As Celacare admits, the USDC Terms govern whether Celacare can redeem USDC directly from Circle.  Opp. at 2; Compl. ¶ 3.  Such admission is fatal to any alleged "unjust enrichment claim."  And, as Circle has explained (and Celacare tacitly acknowledges), Celacare has no right to redeem USDC under the USDC Terms.[4]  Mot. at 3; *supra* at 1, 3–4.

USDC Terms aside, Celacare's putative unjust enrichment claim also fails because Circle has not been enriched because of the Celacare CEO's mistake.  As Celacare recognizes, unjust enrichment requires "(1) an enrichment, (2) an impoverishment, and (3) a relationship between them."  Opp. at 16.  The Complaint does not allege that Circle received money from any of the transactions at issue in this case.  Circle is not alleged to have any involvement in those events.  Compl. ¶¶ 37–38; *see Chumash Cap. Invs., LLC v. Grand Mesa Partners, LLC*, 2024 WL 1554184, at *2 (Del. Super. Ct. Apr. 10, 2024) (dismissing unjust enrichment claim where "the relationship between their enrichment and Plaintiff's impoverishment [wa]s insufficient" because defendants were not alleged to play any knowing role in the alleged misconduct).  The USDC transferred by Celacare still exists in a known location and remains appropriately supported by Circle's USDC Reserves.  Circle has gained nothing because of Celacare's mistake.  Count III must be dismissed.[5]

## CONCLUSION

For the foregoing reasons, Circle respectfully requests that the Complaint be dismissed with prejudice.

---

[4] Celacare's argument that its unjust enrichment claim may go forward because Circle has "disavowed its promise to pay USDC holders the money that it holds on their behalf" should be rejected out of hand.  Opp. at 18.  Circle does not hold money on Celacare's behalf and never promised to pay Celacare anything.

[5] Celacare suggests that Circle should freeze the USDC in question because "Circle treats frozen USDC as removed from circulation and, therefore, removed from its obligation to maintain adequate reserves."  Opp. at 2.  This allegation is not in the Complaint and therefore should not be considered.  It is also false.

Dated: November 12, 2024

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ *Joshua A. Baskin*
Joshua A. Baskin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Email: jbaskin@wsgr.com

*Counsel for Defendant Circle Internet Financial, LLC*

## CERTIFICATE OF SERVICE

    I, Joshua A. Baskin, hereby certify that on November 12, 2024, I caused Reply Brief in Further Support of Circle Internet Financial, LLC's Motion to Dismiss to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of the filing to all registered participants.

Dated: November 12, 2024

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ *Joshua A. Baskin*
Joshua A. Baskin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Email: jbaskin@wsgr.com

*Counsel for Defendant Circle Internet Financial, LLC*