UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 24-12322-RGS

CELACARE TECHNOLOGIES, INC.

v.

CIRCLE INTERNET FINANCIAL, LLC

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

February 12, 2025

STEARNS, D.J.

Plaintiff Celacare Technologies, Inc. (Celacare) filed this lawsuit against Circle Internet Financial, LLC (Circle) seeking enforcement of a negotiable instrument, 6 Del. C. § 3-309 (Count I), replacement of a lost or destroyed securities certificate, 6 Del. C. § 8-405 (Count II), and the return of "money had and received" under Delaware law (Count III). Circle moves to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court will allow the motion.

### BACKGROUND

Circle is a Delaware limited-liability company, headquartered in Boston, Massachusetts, that issues a digital asset called USD Coin (USDC) stored on the Ethereum blockchain. Compl. (Dkt. # 1) ¶¶ 5, 16-17. USDC is

1

a "stablecoin" tied in value to the U.S. Dollar (USD) at a 1-1 exchange rate – for every USDC issued and placed in circulation, Circle promises to Users to hold either one USD or an equivalent amount of USD-denominated assets in User accounts segregated from Circle's corporate accounts. *Id.* ¶¶ 25-26; USDC Terms (Dkt. # 1-1) §1. More than 34 billion USDC currently circulate worldwide. Compl. ¶ 27.

Information regarding USDC is available on Circle's website, including its USDC Terms, which are attached as Exhibit A to the Complaint. The USDC Terms contain provisions governing the redemption of USDC for USD. Only Circle Mint tier customers may directly purchase and redeem USDC through Circle – all other Users must redeem their USDC through third-party facilitators. *See* USDC Terms § 2 ("You may not redeem USDC with Circle unless and until you open a Circle Mint account."). Ultimately, Circle retains "sole discretion" over whether to redeem a User's USDC. *Id.* § 17.

The USDC Terms also provide that blockchain transactions "[are] irreversible and Circle does not have the ability to reverse or recall any transaction once initiated." *Id.* § 13. Pertinent to this case, the USDC Terms state that Users "accept all consequences of sending USDC." *Id.* The Terms warn Users that "[o]nce you send USDC to an address, you accept the risk

that you may lose access to, and any claim on, that USDC indefinitely or permanently." *Id.* The Terms provide as an example that "an address may have been entered incorrectly and the true owner of the address may never be discovered." *Id.* Users are notified that they "bear all responsibility for any losses that might be incurred as a result of sending USDC to an incorrect or unintended USDC address." *Id.*

Additionally, the USDC Terms include provisions governing a User's third-party USDC transactions. *Id.* USDC Users "understand and agree that Circle does not control any products or services sold or offered by third parties using the USDC Services," and that "Circle is not liable for any losses or issues that may arise from such third-party transactions." *Id.* § 14. Any losses or issues experienced by USDC Users who do not hold Circle Mint accounts must be handled "directly with the third-party seller." *Id.*

The relevant transactions in this case were conducted through a third party, Coinbase, Inc., the United States' largest cryptocurrency asset exchange. Compl. ¶¶ 28, 34, 37. Coinbase and Circle are separate, unrelated entities. *Id.* ¶ 34. Coinbase, which is not named as a defendant in this Complaint, hosts a third-party platform on which customers can buy, hold, and trade cryptocurrency assets, such as USDC. *Id.* ¶ 29. To buy and sell cryptocurrency on the platform, customers must create an account and agree

3

to the Coinbase User Agreement, which is attached to the Complaint as Exhibit C. *Id.* ¶ 30; *see* Coinbase User Agreement (Dkt. # 1-3). If Coinbase Users deposit USD to a Coinbase account, they can elect to credit the account either with USD or with USDC. Compl. ¶ 32. If Coinbase Users elect to credit USDC to their account, Coinbase possesses the USDC on their behalf and commits to dispose of that USDC according to the Users' orders. *Id.* ¶ 32. Like the USDC Terms, the Coinbase User Agreement warns that "Digital Asset Transfers cannot be reversed once they have been broadcast to the relevant Digital Asset network." Coinbase User Agreement §§ 4.1, 4.4.

In May of 2024, Celacare opened an institutional securities account at Coinbase. Compl. ¶ 37. On July 3, 2024, Celacare gave Coinbase one million USD in exchange for one million Circle USDC. *Id.* ¶ 38. Celacare intended to transfer the USDC to an unnamed "contract counterparty" at an Ethereum wallet address. *Id.* ¶ 39. However, later that day, Celacare's President and CEO, Kenneth Yates, mistyped the recipient's address, transcribing a "B" as an "8," causing the one million USDC to be sent by Coinbase to the wrong Ethereum wallet address. *Id.* ¶¶ 1, 38, 39. The one million USDC remain in that wallet today. *Id.* ¶ 41.

Celacare alleges that because of the cryptography underlying the Ethereum blockchain, no one will ever be able to access these one million

USDC again. *Id.* ¶ 43. On August 14, 2024, Celacare's counsel sent a message to the wallet address where the USDC was deposited, via a non-fungible token, requesting that any person with control of the wallet address prove that control by transferring an arbitrary (and small) amount of USDC to an arbitrary address. *Id.* ¶ 49. As of its filing of the Complaint, counsel had not received any response. *Id.* ¶ 50.

The following day, on August 15, 2024, Celacare sent Circle a draft Complaint and letter demanding a refund of one million USD for its lost USDC. *Id.* ¶ 81. After Circle declined to place the wallet that held the mistakenly transferred USDC on an "access denial" list, which would have forbidden it from being used in future transactions, Celacare filed this suit on September 9, 2024, naming Circle as the sole defendant. *Id.* ¶¶ 81, 90.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that

5

states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. If the allegations in the complaint are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," the complaint will be dismissed. *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

At the motion to dismiss stage, the court may take into consideration "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," in addition to the complaint's allegations. *Schaer v. Brandeis Univ.*, 432 Mass. 474, 477 (2000), quoting 5A Wright & Miller, Federal Practice and Procedure § 1357, at 299 (1990).

## DISCUSSION

**Count I**

In its opposition brief, Celacare requests that its alternative claim to enforce its USDC purchase as a "negotiable instrument," 6 Del. C. § 3-309, be dismissed without prejudice. *See* Dkt. # 17 at 8 n.2. The court will accordingly dismiss Count I.

**Count II**

Count II asserts a claim for replacement of a lost or destroyed securities certificate under 6 Del. C § 8-405.[1]  Compl. ¶ 82.  This statute requires the issuer of a "certificated security" to issue a new certificate to the owner of a certificated security that has been lost, destroyed, or wrongfully taken if that owner: (1) so requests before the issuer has notice that the certificate has been acquired by a protected purchaser; (2) files a sufficient indemnity bond; and (3) satisfies other reasonable requirements imposed by the issuer.  *See Mergenthaler v. Enzolytics, Inc.*, 2022 WL 3444949, at *2 (D. Del. Aug. 17, 2022).  "Certificated security" means "a security that is represented by a certificate."  6 Del. C. § 8-102(a)(4).  "Security" is defined under Article 8 of the Delaware Uniform Commercial Code (UCC) as:

> an obligation of an issuer or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer:
>> (i) which is represented by a security certificate in bearer or registered form, or the transfer of which may be registered upon books maintained for that purpose by or on behalf of the issuer;
>> (ii) which is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations; and
>> (iii) which:
>>> (A) is, or is of a type, dealt in or traded on securities exchanges or securities markets; or

---

[1] The parties agree that Delaware law governs this dispute.  Compl. ¶¶ 54, 86.

7

>> (B) is a medium for investment and by its terms expressly provides that it is a security governed by this Article.

6 Del. C. § 8-102(a)(15).

Celacare alleges that USDC is a securities certificate because it is an "obligation" of Circle as an "issuer" represented to be in "bearer form."[2] *See* Compl. ¶ 75 (stating "Circle's obligation to pay dollars to anyone who possesses USDC are debt 'securities' under Article 8"); Dkt. # 17 at 7. Celacare claims that USDC is an "obligation" because the USDC Terms, attached to the Complaint, give anyone who holds USDC the "right to redeem" USDC for USD funds. *See id.* ¶ 55; Dkt. # 17 at 8.

The court interprets Circle's USDC Terms in accordance with familiar canons of contract interpretation. *See Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1995). Thus, where the terms are unambiguous, they are given their "plain, ordinary, and natural meaning." *Filiatrault v. Comverse Tech., Inc.*, 275 F.3d 131, 135 (1st Cir. 2001). Here, Circle's USDC Terms unambiguously state that Circle does not promise to redeem USD to anyone who possesses USDC – only a "Holder" of USDC has

---

[2] Celacare does not allege in its Complaint that USDC is a security because it is a "share, participation or other interest," or the property of an enterprise of" Circle. *See* Compl. ¶ 75; Dkt. # 17 at 7. Therefore, the court declines to consider whether USDC is a security under Article 8 for purposes of any of these other definitions.

"the right to redeem USDC for USD funds." USDC Terms § 2. A Holder "may not redeem USDC with Circle unless and until [it] open[s] a Circle Mint account." *Id*. § 2; *see also id*. ("For the avoidance of doubt, if a Holder is not eligible to register a Circle Mint account, or fails to do so, such Holder is not entitled to redeem USDC with Circle . . . USDC does not itself generate any interest or return for holders of USDC and only represents your right to redeem USDC for an equivalent amount of USD through your account with Circle."). Circle's USDC Terms also provide that its obligation to redeem USDC is conditioned on, among other things, the User's "possession of a corresponding amount of USDC associated with a registered Circle Mint account." *Id*. § 13.

Here, Celacare has not pled that it holds a Circle Mint account or that it possesses the minimum offset of one million USDC – rather, in its Complaint, it admits that the one million USDC presumably remain in an anonymous third-party's Ethereum wallet that Celacare cannot access. Compl. ¶¶ 39, 41; Dkt. # 17 at 8. Nor does it allege that it conducted any transactions directly with Circle – rather, it dealt exclusively with Coinbase.[3]

---

[3] Celacare also claims that pursuant to Coinbase's User Agreement, Coinbase and its Users expressly agree that all assets traded on its platforms are "securities" within the meaning of UCC Article 8, that these assets are held in a "securities account," and that Coinbase is a "securities intermediary" within the meaning of the UCC. *See* Compl. ¶ 33; Coinbase

9

Celacare acknowledges in its Complaint that Circle and Coinbase are separate entities, with Circle retaining full control of its USDC business. *Id.* ¶ 34. For the reasons above, Circle is not obligated to redeem Celacare's missing USDC.[4]

**Count III**

In the alternative to Counts I and II, Count III asserts a common-law claim for "money had and received." Compl. ¶ 93. However, "money had and received" is "no longer a legally cognizable claim" under Delaware law and instead is "subsumed by modern law regarding breach of contract." *St. Search Partners, L.P. v. Ricon Int'l, L.L.C.*, 2005 WL 1953094, at *4 (Del. Super. Ct. Aug. 1, 2005). Celacare does not allege that it has a contractual

---

User Agreement § 2.7.2. However, Celacare's claim that "on information and belief, Circle also agreed" to treat USDC as "securities" as defined by the UCC, *see* Compl. ¶ 36, is conclusory, *see SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc), and bears no persuasive weight.

[4] In its opposition to Circle's motion to dismiss, Celacare argues that because, at some unspecified time(s), Circle has agreed to redeem USDC, that creates a redemption "obligation" binding on Circle and thus the first part of the definition of a security is satisfied. *See* Dkt. # 17 at 8. Even if the court were to assume that Circle has assumed an "obligation" to redeem USDC in certain cases, Celacare has failed to sufficiently plead the third prong of its claim under § 8-405, that it has complied with the "other reasonable requirements imposed by the issuer." 6 Del. C. § 8-405(a)(3). Celacare has not pled that it has a Circle Mint account, which is one of Circle's reasonable conditions to redeem USDC.

10

right to recover from Circle and thus cannot avail itself of any contractual remedy.

Even if the court were to entertain an action for "money had and received," Celacare does not plausibly state such a claim. At common law, "money had and received" allowed recovery "[w]herever a man has in his hands money belonging to another which he cannot equitably retain and he either promises or the law can raise an implied promise to pay it." *Guthrie v. Hyatt*, 1 Del. 446, 447 (Del. Super. Ct. 1834). The claim, however, could not be brought "against third parties who did not receive money from the plaintiff." *St. Search Partners, L.P.*, 2005 WL 1953094, at *4. Here, the Complaint does not plausibly allege that Circle received any money or other things of value from Celacare.[5]

In its opposition brief, Celacare attempts to recast its "money had and received" claim in equity as one of unjust enrichment. Dkt. # 17 at 16. However, Celacare is not permitted to amend its Complaint by way of a reply

---

[5] In its Complaint, Celacare alleges that it "transferred one million dollars to Circle." Compl. ¶ 85. However, this allegation is inconsistent with Celacare's earlier allegation that it "transferred one million U.S. Dollars to Coinbase." *Id.* ¶ 38. The court, consequently, will disregard Celacare's payment claim. *See Colesanti v. Becton Dickinson*, 2019 WL 4043957, at *5 (D.R.I. July 19, 2019) ("Factual allegations that appear to be internally inconsistent with other well-pled factual allegations must also be set aside.").

brief in opposition to a motion to dismiss. *See, e.g., Klein v. MHM Corr. Servs., Inc.*, 2010 WL 3245291, at *2 (D. Mass. Aug. 16, 2010) ("For the purposes of deciding whether a plaintiff's factual allegations are sufficient in the context of a motion to dismiss under Rule 12(b)(6), the court may not look beyond the complaint to facts alleged solely in a plaintiff's moving papers."); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1198 n.1 (9th Cir. 1998).[6]

---

[6] Even if the court were to consider it, Celacare has not sufficiently pled a claim for unjust enrichment. Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property against the fundamental principles of justice or equity and good conscience." *State ex rel. Jennings v. Monsanto Co.*, 299 A.3d 372, 390 (Del. 2023), quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988). To support a claim for unjust enrichment, a plaintiff must plead: (1) an enrichment; (2) an impoverishment; (3) a relationship between them; (4) the absence of justification; and (5) the absence of a remedy provided by law. *State ex rel. Jennings*, 299 A.3d at 391.

As previously discussed, Circle has not been enriched by Celacare's mistaken USDC transfer – the one million USDC that Celacare transferred on Coinbase's platform presumably remains at the erroneous wallet address that Celacare provided. Compl. ¶ 41. Nor has Celacare plausibly alleged that Circle did anything to knowingly facilitate the alleged accidental transfer. Dkt. # 13 at 22. *See Chumash Cap. Invs., LLC v. Grand Mesa Partners, LLC*, 2024 WL 1554184, at *2 (Del. Super. Ct. Apr. 10, 2024). In its USDC Terms, Circle explicitly states that "Circle is not liable for any losses or issues that may arise from such third-party transactions." USDC Terms § 14. Any losses or issues experienced by USDC Users that do not hold Circle Mint accounts must be handled "directly with the third-party seller." *Id.* Coinbase also warns Users when they open an account and agree to its User Agreement that "Digital Asset Transfers cannot be reversed once they have been broadcast to the relevant Digital Asset network." Coinbase User Agreement § 4.4. Further, Coinbase "recommend[s] customers send a small amount of

## ORDER

For the foregoing reasons, Count I is dismissed without prejudice. Counts II and III are dismissed with prejudice. The Clerk will enter judgment for Circle and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

Supported Digital Assets as a test before sending a significant amount of Supported Digital Assets." *Id.* §§ 4.1, 4.4.